UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **ENTREPRENEUR MEDIA, INC.,**<br>2445 McCabe Way, Suite 400<br>Irvine, California  92614<br><br>             Plaintiff,<br><br>v.<br><br>**ENTREPRENUER.COM**, an Internet<br>Domain Name,<br><br>Registrant:<br>Name Administration Inc. (BVI)<br>Box 10518 A.P.O.<br>Grand Cayman, Cayman Islands B.W.I.<br>KY<br>admin@nameadmininc.com<br><br>             Defendant. | Civil Action No. 1:11-cv-584-CMH-TRJ |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Plaintiff Entrepreneur Media, Inc. ("Plaintiff" or "EMI") submits this memorandum in opposition to the Motion to Compel filed by Defendant Internet Domain Name *entreprenuer.com* (the "Defendant Domain Name").

### INTRODUCTION

EMI was surprised by this motion.  When the motion was filed, the parties had not reached an impasse on discovery and, in fact, EMI believed that the parties were continuing their dialogue in order to avoid burdening the Court with an unnecessary motion.  But *after* EMI's counsel emailed Defendant Domain Name's counsel regarding the remaining disputes, and without even responding to that email, Defendant Domain Name filed this motion claiming an impasse.  EMI is pleased to report that the parties subsequently continued their meet and confer discussions, and were able to resolve their dispute as to several of the document requests raised

IRI-28904v4

by Defendant Domain Name's motion. Accordingly, disputes as to document request nos. 26, 28, 32, 33, and 35 have been resolved, and disputes remain only as to document request nos. 30, 34, 36 through 39, and interrogatory nos. 8, 15, and 25.

EMI's efforts to compromise on vague, overly broad, and burdensome requests have been made in an attempt to resolve any issues related to EMI's responses prior to their due date on November 4th.

In seeking to compel irrelevant and burdensome discovery from EMI, Defendant Domain Name deliberately fails to inform the Court that EMI's motion to strike the Defendant Domain Name's answer and dismiss its counterclaims (Dkt. No. 15) will be heard this Friday, October 28th. Further, Defendant Domain Name fails to mention that, should the Court grant EMI's motion and rule that Defendant Domain Name—a mere address—is an improper party and cannot appear in this case, serve discovery, or bring counterclaims, then this entire motion to compel will be moot.

If not mooted by the Court's ruling on Friday, Defendant Domain Name's motion to compel should be denied as to the remaining requests because it improperly seeks the Court's permission to embark on a "fishing expedition" and compel EMI to search for and produce extremely broad and expansive categories of documents that, in many cases, span *over 30* years, even though Defendant Domain Name has only allegedly been in existence *since 2000*. As to other requests, Defendant Domain Name seeks the Court's permission to compel EMI to search for and produce information that has very limited or no relevance to this case at all. There is no doubt that Defendant Domain Name feels it can seek aggressive discovery, because, as a web address that makes money by luring internet traffic to its site, it likely has few documents to produce. Meanwhile, EMI, a multi-faceted business that employs people and has been providing

products and services to the public since the 1970s, is being asked to produce an enormous amount of documents, many of which are irrelevant to this case or predate any of the facts at issue, merely because it seeks to protect its trademark. Defendant Domain Name's discovery games should be halted.

For these reasons, and those set forth more fully below, Defendant Domain Name's motion should be denied.

## FACTUAL BACKGROUND

EMI is a private corporation that has taken steps to protect the valuable rights it has in its federally registered trademark ENTREPRENEUR. Its rights to that mark date back to 1978, decades *before* Defendant Domain Name began using www.entreprenuer.com. Further, Defendant Domain Name admits, which it must, that "entreprenuer" is a common misspelling of "entrepreneur." EMI believes the Defendant Domain Name was created to divert Internet traffic from people seeking to find EMI, and then capitalize on that traffic through paid links to other websites. Defendant Domain Name has decided to defend this case by attempting to "bury" EMI with overbroad, vague, and improper requests. This is made easier in a one-sided discovery case like this, where EMI has decades of documents, and Defendant Domain Name likely has very little information to produce. That sort of discovery abuse should not be countenanced.

## ARGUMENT

**I. THIS MOTION MAY BE MOOTED BY EMI'S PENDING MOTION TO STRIKE/DISMISS.**

This Friday, the Court will hear EMI's motion to strike Defendant Domain Name's answer and counterclaims. EMI has argued that, as a mere address, Defendant Domain Name cannot appear in this action and, *inter alia*, serve discovery. Instead, the sponsor of this lawsuit,

a domain name registrant based in the Cayman Islands, must appear if it wishes to defend this case and pursue counterclaims.

If this Court grants EMI's motion, then Defendant Domain Name's motion to compel will be moot, as its discovery requests would then have been made by an improper address, without standing to appear in this action.

## II.     THE STANDARD FOR DISCOVERY.

Defendant Domain Name mischaracterizes the scope of discoverable information. Citing *Wu v. Tseng*, Defendant Domain Name states: "[i]t is well-established that the 'test for whether material is within the scope of discovery is very broad' even if the 'information may turn out to be irrelevant for purposes of trial . . . ." Mot. to Compel at 3. Defendant Domain Name fails to point out that, as a starting point, only information "that is relevant to any party's claim or defense" is presumptively discoverable. Fed. R. Civ. P. 26(b)(1); *Wu v. Tseng*, No. 2:06-cv-346, 2007 WL 4143077, at*3 (E.D. Va. Nov. 19, 2007) ("The Court may order a party to respond to discovery on any relevant matter 'for good cause.'") (citing Rule 26(b)(1)). That is, only for "good cause" may a court order discovery on information that is merely "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Accordingly, Defendant Domain Name's statement that the burden of proof lies with EMI ignores Defendant Domain Name's own burden under Federal Rule 26. None of the requests at issue address any party's claim or defense. At best, these requests potentially touch on "the subject matter" of this action, but "only upon a showing of 'good cause' may a court order discovery of matters relevant to the 'subject matter." *Quality Aero Technology, Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 315 (E.D.N.C. 2002) (quoting Fed. R. Civ. P. 26(b)(1)). Thus, Defendant Domain Name bears the burden of showing "good cause" to compel discovery on these issues. It has failed to do so.

Further, a party may not propound "indiscriminate, blanket requests for all files" on a particular topic, "which represent little more than fishing expeditions." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 340 (4th Cir. 1994).

Finally, the Court may limit discovery of even relevant documents where the discovery sought is unreasonably cumulative or duplicative, can be more easily obtained from some other source, or the burden or expense of the requested discovery outweigh the likely benefit. Fed. R. Civ. P. 26(b)(2)(C); *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [such discovery] . . . if it concludes that [a limitation in Rule 26(b)(2)(C) applies].").

### III. NO DISPUTE EXISTS AS TO DOCUMENT REQUESTS 26, 28, 32, 33, AND 35 DUE TO RESOLUTION BY THE PARTIES.

The parties, in continuing their meet and confer discussions, were able to resolve issues surrounding document requests 26, 28, 32, 33, and 35. Thus, these requests are not addressed in EMI's opposition.

### IV. DEFENDANT DOMAIN NAME IMPROPERLY SEEKS NO TIME RESTRICTION FOR INTERROGATORY NO. 8.

**Interrogatory No. 8**
*Identify the types of ultimate consumers to whom EMI offers for sale EMI's Goods in connection with EMI's Marks and all persons with knowledge thereof and Bates Numbers (from EMI's document production) of any documents referencing or reflecting such consumers.*

As Defendant Domain Name knows, EMI sells, among other things, magazines at newsstands. Thus, Interrogatory No. 8, which asks EMI to identify the "types" of customers to whom EMI "offers" for sale its goods, and "*all persons* with knowledge thereof and Bates Numbers" of documents "referencing or reflecting such consumers," is nonsensical. EMI

"offers" for sale its magazine to anyone who walks by a newsstand.  Thus, it cannot identify the "types" of customers who shop at newsstands, nor can it list *every* person with knowledge of that type of customer.

Accordingly, the parties agreed to limit this interrogatory to existing, non-privileged materials on general demographics of purchasers, and the persons most knowledgeable about those materials.  Mot. at 6; Declaration of Mark A. Finkelstein, attached as Ex. A, at ¶ 2.

The parties' sole remaining dispute on this issue pertains to whether EMI should identify such information from 2000 on (which would cover the entire existence of Defendant Domain Name), or whether EMI should be forced to review 30+ years of documents to see if any old, outdated, compilations from decades ago exist.  Mot. at 6.

No support is given for Defendant Domain Name's position that EMI should have to burdensomely search from the 1970s to present for this information.  Defendant Domain Name states that its request "goes to the heart of Plaintiff's claims and Defendant's counterclaims," but then cites statutes that have nothing to do with the request.  *Id*.  Indeed, 15 U.S.C. § 1825 pertains to criminal acts that are not at issue in this case.  And the cited quotes in Defendant Domain Name's motion only pertain to the strength of EMI's mark.  Mot. at 6.  That is, Defendant Domain Name never explains how decades old demographic summaries possibly "go to the heart" of this case, or even why such information, which is outside the time period implied by Defendant Domain Name's laches defense, would be relevant and not cumulative at all, or why eleven years' worth of data (as offered by EMI) would not be sufficient.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (holding it is proper to deny discovery on events that occurred before the applicable limitations period); *What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004) (holding that,

because the Lanham Act does not have a limitations period, the doctrine of laches is used instead). The expense and difficulty of locating such information far outweighs any utility. Declaration of Ronald L. Young, attached as Ex. B, at ¶ 2.

In responding to other discovery requests, EMI has already agreed to produce information regarding the strength of its mark. *E.g.*, response to Document Request No. 22 (demanding that EMI produce "those documents and things upon which EMI has based its allegations in ¶ 14 of the complaint that the 'ENTREPRENEUR Mark has come to identify and distinguish EMI's goods and services and represents enormous goodwill of great value belonging exclusively to EMI.'"). Interrogatory No. 8, on the other hand, seeks to force EMI to locate outdated demographic summaries that have no bearing on this lawsuit. Defendant Domain Name's motion to compel EMI to search for and identify documents without any time restriction in response to this request should be denied.

### V.    DEFENDANT DOMAIN NAME IMPROPERLY SEEKS NO TIME RESTRICTION FOR INTERROGATORY NO. 15 AND DOCUMENT REQUEST NO. 34.

**Interrogatory No. 15**
*Identify each instance that EMI has received an assertion that EMI's Mark is invalid, unenforceable, or otherwise not entitled to trademark protection and all persons with knowledge thereof and the Bates Numbers (from EMI's document production) of any documents referencing or reflecting such instances(s).*

**Document Request No. 34**
*Produce all documents regarding each instance that EMI has received an assertion that EMI's Mark is invalid, unenforceable, or otherwise not entitled to trademark protection.*

In Interrogatory No. 15 and Document Request No. 34, Defendant Domain Name seeks instances where someone else has merely *asserted* that EMI's mark is invalid, unenforceable, or otherwise not entitled to trademark protection. That is, it is not seeking any actual findings, but only untested assertions by third parties.

The relevance of such material is questionable, to say the least. Nevertheless, to avoid a discovery dispute, EMI offered to provide initial responses to any cease and desist letters, initial affirmative claims made by third parties, and court cases, while listing the person most knowledgeable about the matters going back to 2000. But that compromise did not satisfy Defendant Domain Name. By this motion, it asks the Court to order EMI to search through 30+ years of its archives for any accusations by third parties, regardless of their merit.

Defendant Domain Name argues that it needs these documents so that it, and the trier of fact, have "information necessary to determine the strength of Plaintiff's mark." Mot. at 7. No explanation is given how an accusation made 15, 20, or 30 years ago would have any bearing whatsoever on the strength of EMI's mark. And, of course, it would have none. Defendant Domain Name is not entitled to information that pre-dates any limitations period, *Oppenheimer Fund, Inc.*, 437 U.S. at 352, and has not given any plausible explanation why information dating back further than 2000 is even necessary. Again, it appears Defendant Domain Name would like EMI to spend time and money on a fishing expedition that would not yield anything relevant to this action. *See* Young Declaration, at ¶ 2.

## VI. DOCUMENT REQUEST NO. 30 SEEKS DOCUMENTS THAT ARE NOT RELEVANT AND IS OVERBROAD AND BURDENSOME.

**Document Request No. 30**
*Produce those documents and things regarding any trademark watch, "policing," protection or other notification report regarding EMI's Mark and any action by EMI related thereto since January 1, 2000.*

Defendant Domain Name has not established "good cause" to compel production of every trademark notification related to EMI's eleven asserted trademark registrations for the past eleven years. Defendant Domain Name claims that it is entitled to such documents, because they are relevant to "the vigilance with which Plaintiff protects its asserted marks and the existence of other uses of the generic term similar to Defendant's generic use of 'entreprenuer.'" Mot. at 8.

First, it is not clear how the vigilance of EMI's enforcement efforts is at issue in this action—Defendant Domain Name claims in its Counterclaims that EMI is <u>overly</u> vigilant in enforcing the EMI marks (Dkt. No. 9, at 8-9), but vigilance would only be at issue for any of Defendant Domain Name's claims if EMI was <u>insufficiently</u> vigilant. 3 McCarthy on Trademarks and Unfair Competition § 17:8 (4th ed.) ("Sometimes a mark becomes abandoned to generic usage as a result of the trademark owner's failure to police the mark . . . .").

Second, EMI has offered to submit representative samples of trademark watch notices, which should be more than sufficient to show other uses of terms similar to "entreprenuer" of which EMI had knowledge. As trademark watches are, by their nature, overbroad, a request for *all* trademark watches will obviously encompass mostly irrelevant material. There is simply no justifiable reason for EMI to produce such information dating back eleven years given the attendant expense complying with such a broad request would entail. Young Decl. at ¶ 3.

Defendant Domain Name's arguments are not persuasive. For instance, it claims it needs the watch notices "to determine the extent of the use of Plaintiff's mark." Mot. at 9. Watch notices provide a trademark holder with notice when a new trademark is applied for, or published for opposition by, a third party, that contain all, a portion of, or something similar to, the search term selected by the subscriber. Young Decl. at ¶ 3. Many of these notices pertain to trademark applications that are filed on an "intent-to-use" basis, and thus do not describe the nature or extent of actual "use" of a term at all. *Id*. Accordingly, these watch notices do not relate to "the extent of the use of Plaintiff's mark."

Grasping for straws, Defendant Domain Name then claims it needs every single watch notice for the past eleven years in case EMI received notice about the Defendant Domain Name. Mot. at 9. But EMI has already agreed to produce documents related to its knowledge of

www.entreprenuer.com, so Defendant Domain Name's claim that it needs *all* watch notices going back for eleven years for that purpose is baseless.

There is simply no reason that EMI should be forced to produce *every* watch notice it ever received going back eleven years, and Defendant Domain Name offers no justification for such an overly broad request that would only yield irrelevant information.

### VII.   DEFENDANT DOMAIN NAME SEEKS EMI'S *ATTORNEYS* TO UNDERTAKE AN ENORMOUS TASK IN INTERROGATORY NO. 25 AND DOCUMENT REQUESTS NOS. 36 THROUGH 39.

**Interrogatory No. 25**
*Describe those circumstances where EMI believes the word "entrepreneur" can be used generically in commerce.*

**Document Request No. 36**
*Produce those documents and things regarding any current unauthorized use of EMI's Mark.*

**Document Request No. 37**
*Produce those documents and things regarding any current unauthorized use of any mark that EMI asserts to be confusingly similar to EMI's Mark.*

**Document Request No. 38**
*Produce those documents and things in your possession regarding any current lawful use of the word "entrepreneur" on the Internet.*

**Document Requests No. 39**
*Produce those documents and things in your possession regarding any current lawful use of the misspelled word "entreprenuer" on the Internet.*

In Interrogatory No. 25 and Document Request Nos. 36 through 39, Defendant Domain Name is making requests of EMI's counsel.  The requests ask EMI to find every use of the word "entrepreneur" in its possession and on the Internet—going back over thirty years—and then make a legal determination as to which uses are "authorized," "unauthorized," "lawful," and "unlawful."  It is unclear if Defendant Domain Name is seeking a current legal position on these uses, or a position as to the past uses.  Either way, these requests are wholly improper.

EMI's counsel spent an inordinate amount of time during the parties' meet and confer in an attempt to understand how these requests could be interpreted to seek anything other than attorney work product. Indeed, in an email sent prior to the filing of this motion, EMI's counsel stated:

> As I tried to explain on the phone, I don't see how we can comply with these requests at all, and certainly not without revealing privileged information. For instance, request 38 demands documents and things 'regarding any current lawful use of the word 'entrepreneur' on the Internet.' Thus, it seems to require us to (1) pull every document we have in our possession, custody, or control that includes 'entrepreneur' in the Internet (likely that would be a very large number of documents given our client's business), and (2) have an attorney make a legal determination as to which uses are 'lawful' and which uses are not 'lawful.' How would we go about doing so without engaging in a very burdensome process that would result in an attorney making legal interpretations of issues that do not seem to be related to this case at all?

Finkelstein Decl., at Ex. 1.

In its motion, Defendant Domain Name argues it is seeking "examples that EMI identifies and that will help the trier of fact evaluate the protectability and strength of the asserted mark and determine where Defendant's use of a similar term fits among those uses." Mot. at 12. But Defendant Domain Name is not seeking "examples." It wants EMI to find and categorize every single use of "entrepreneur" into different buckets. Moreover, those categories are entirely *legal* in nature. Thus, a lawyer would need to make a legal judgment call as to every use. This is improper. The Fourth Circuit has held:

> [a]n attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.' . . . As a result, 'opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) (citations and quotations omitted). Further, EMI's opinion on what constitutes fair use of its mark is obviously a legal conclusion, and an inappropriate topic for an interrogatory. *Cameron v. Sarraf*, No. CIV.A.98–1227–AM, 2000 WL 33677584, at *6 (E.D.Va. 2000) (refusing to allow interrogatories that called for legal conclusions); 21 Fed. Proc., L. Ed. § 50:869 (interrogatories calling for pure conclusions of law are not permissible).

Moreover, there is no purpose to this exercise. Defendant Domain Name cannot defend this case based on whether EMI's lawyers presently think some other use of "entrepreneur" is lawful or unlawful. The only case cited by Defendant Domain Name, *Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.,* 240 F.3d 251, 253-54 (4th Cir. 2001), is not to the contrary. In that case, the Court merely discussed the categories a trademark can fall into, from "generic" to "arbitrary or fanciful." It did not state that a party can ask an opposing party (or, really, its lawyers) to divide up hundreds, or thousands, of different uses of a mark into various legal categories.

In propounding an interrogatory that seeks legal conclusions and document requests that concern only information that would be subject to work product protection, Defendant Domain Name telegraphs that its true intention is to harass EMI. This is improper. "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26 Advisory Committee's Notes, 1983 Amendment.

## CONCLUSION

For the reasons stated above, Defendant Domain Name's motion should be denied. To the extent sanctions are awarded, they should be awarded to EMI for the attorneys' fees and costs incurred in opposing this unnecessary motion.

Dated: October 26, 2011

Respectfully submitted,

*/s/ Tara Lynn R. Zurawski*

Edwin L. Fountain (Va. Bar No. 31918)
Tara Lynn R. Zurawski (Va. Bar No. 73602)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: elfountain@jonesday.com
Email: tzurawski@jonesday.com

Mark A. Finkelstein (admitted *pro hac vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 553-7502
Facsimile: (949) 553-7539
Email: mafinkelstein@jonesday.com

*Counsel for Plaintiff Entrepreneur Media, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2011, I electronically filed the foregoing with the Clerk of the Court using the EC/ECF system, which will send a notification of such filing (NEF) to the following:

>Attison L. Barnes
>WILEY REIN LLP
>1776 K Street, N.W.
>Washington, DC 20006
>Email: abarnes@wileyrein.com

By: */s/ Tara Lynn R. Zurawski*
_____
Tara Lynn R. Zurawski (Va. Bar No. 73602)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: tzurawski@jonesday.com